

# FILED

NOV 2 2 2016

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff/Respondent,<br><br>vs.<br><br>MARY ANN McCULLEY,<br><br>Defendant/Movant. | Cause No. CR 13-07-BU-DLC<br>CV 16-01-BU-DLC<br><br><br>ORDER DENYING § 2255 MOTION<br>AND DENYING CERTIFICATE OF<br>APPEALABILITY |

This case comes before the Court on Defendant/Movant Mary Ann

McCulley's motion to vacate, set aside, or correct the sentence under 28 U.S.C. §

2255. At the time the motion was filed, McCulley was a federal prisoner on

supervised release.[1] On June 16, 2016, the United States filed an answer to the

motion. McCulley submitted a reply on July 22, 2016.

---

[1] McCulley discharged her sentence on April 21, 2016. Nonetheless, she was "in custody" on supervised release when she filed her § 2255 motion on January 4, 2016. *See Matus-Leva v. United States*, 287 F.3d 758, 761 (9th Cir. 2002). Jurisdiction lies under 28 U.S.C. § 2255(a). In addition, the case is not moot. McCulley challenges the validity of her conviction, and a criminal conviction is generally presumed to have continuing collateral consequences sufficient to confer standing under Article III's "case or controversy" clause. *See* U.S. Const. Art. III, § 2, cl. 1; *Spencer v. Kemna*, 523 U.S. 1, 12 (1998); *Sibron v. New York*, 392 U.S. 40, 55-56 (1968); *Carafas v. LaVallee*, 391 U.S. 234, 238 (1968).

1

# I. Background

On May 21, 2013, McCulley was indicted on one count of mailing a threatening communication in interstate commerce, a violation of 18 U.S.C. § 875 (Count 1); one count of falsely impersonating a federal officer, a violation of 18 U.S.C. § 912 (Count 2); and one count of stealing mail addressed to someone else, a violation of 18 U.S.C. § 1708 (Count 3). Counts 1 and 3 carried a five-year maximum sentence, Count 2 a three-year maximum. McCulley was arrested in the Western District of Kentucky and appeared at arraignment by phone. *See* Rule 40 Documents (Doc. 5); Minutes (Doc. 16). The Federal Defenders' Senior Litigator, Michael Donahoe, was appointed to represent her. *See* Order (Doc. 10).

The criminal charges against McCulley arose amidst a civil lawsuit she filed against US Bank and others in state court in Bozeman, Montana. McCulley alleged that both the terms of her loan and the deed to her real property were intentionally and secretly altered to convert what McCulley and her realtor believed to be a $300,000 30-year residential loan into an 18-month commercial loan with a balloon payment due at termination. Count 1 was based on McCulley's alleged e-mailing of a threat on January 24, 2012, to a lawyer representing US Bank. Count 2 was based on her visit to the home of one Thomas Cahill ("Cahill"), a former employee of US Bank, for the purpose of interviewing and obtaining information from him. Count 3 was based on her alleged taking of

Cahill's mail, also for the purpose of obtaining information that might be useful in the civil suit. Counts 2 and 3 were alleged to have occurred on April 24, 2012.

Before the federal charges were filed, McCulley was convicted of misdemeanor assault in state court as a result of drawing a firearm at a settlement conference held in the civil matter. The settlement conference occurred on April 25, 2012, one day after the date alleged in Counts 2 and 3 of the federal indictment.

As the criminal charges proceeded in this Court, McCulley's civil lawsuit was also proceeding toward trial in state court. In this Court, Donahoe filed several pretrial motions. On August 23, 2013, the United States filed a superseding indictment alleging the same charges but adding more specific factual allegations as a preliminary to all counts and as to Count 2. *See* Superseding Indictment (Doc. 39) at 2, 3; *see also* Resp. to Mot. to Dismiss (Doc. 31) at 12-13, 14-15. The federal trial was set for October 8, 2013. Order (Doc. 32). The state trial was set for February 2014.

On August 30, 2013, Donahoe notified the Court that the parties had reached a plea agreement and he did not intend to file any additional briefing on the still-pending pretrial motions. *See* Notice (Doc. 43); Minutes (Doc. 42). On September 10, 2013, the parties filed a fully executed plea agreement. McCulley agreed to plead guilty to Count 2, and the United States agreed to dismiss Counts 1 and 3. Plea Agreement (Doc. 45) at 2 ¶ 2. The United States agreed to recommend a

3

three-level reduction in the offense level under the sentencing guidelines to reflect McCulley's timely acceptance of responsibility. *Id.* at 6 ¶ 6. McCulley waived her right to appeal the sentence. *Id.* at 7 ¶ 8(1). The United States also agreed not to seek McCulley's detention pending sentencing, *id.* at 8 ¶ 10, thus improving her chances of attending the civil trial the following February.

At the change of plea hearing held on September 13, 2013, however, the parties advised the Court that while McCulley would admit she impersonated a federal agent or employee, she would not admit she posed as an FBI agent. The superseding indictment charged that McCulley claimed she was a "Special Agent of the Federal Bureau of Investigation" and "falsely stated that she was a Special Agent of the Federal Bureau of Investigation engaged in an investigation into an employee of US Bank." Superseding Indictment (Doc. 39) at 3. Because McCulley was not prepared to plead guilty to that specific charge, the change of plea hearing was terminated. *See generally* Change of Plea Tr. (Doc. 62).

On September 19, 2013, the parties filed another plea agreement. The United States also filed a superseding information, alleging one count of false impersonation of a federal officer and employee and omitting the superseding indictment's allegations that McCulley pretended to be an FBI agent. *See* Superseding Information (Doc. 57) at 2. In essence, the plea agreement was identical to the one originally filed, except that McCulley agreed to plead guilty to

4

the superseding information and the United States agreed to dismiss all counts of the superseding indictment. Plea Agreement (Doc. 56) at 2 ¶ 2, 3 ¶ 4; *see also id.* at 6-7 ¶ 6; 7 ¶ 8. On October 9, 2013, the United States filed an amended offer of proof. *See* Am. Offer of Proof (Doc. 65).

On October 10, 2013, in open court, McCulley waived indictment and pled guilty to impersonating a federal employee as alleged in the superseding information. *See* Waiver of Indictment (Doc. 67); Minutes (Doc. 66). She admitted that she told Cahill that she was employed by a federal government agency and was investigating a matter. She said she made up the name of the agency. Her guilty plea was accepted, and she was adjudged guilty. *See* Change of Plea Tr. (Doc. 85) at 34:2-38:20. Sentencing was set for February 21, 2014. Order (Doc. 68).

On February 4, 2014, as the civil suit was being tried in state court, the Court gave notice that it would consider imposing a sentence above the advisory guideline range based on "the nature and circumstances of the offense, the Defendant's demonstrated capacity for violence and the dramatic negative impact of the conduct related to the offense of conviction upon the victims of the offense." Notice (Doc. 71) at 1. The Court's reference to victim impact related to statements made by Cahill to the probation officer for the presentence report. *See, e.g.*, Presentence Report ¶¶ 20, 27, 28; Order Setting Sentencing (Doc. 68) at 2 ¶ 6.

On February 11, 2014, Donahoe moved to continue the sentencing hearing on the grounds that the jury in McCulley's civil action awarded a $6,000,000 verdict in her favor on February 7, 2014. As a result, McCulley no longer appeared to qualify for appointed counsel and would need time to retain counsel. *See* Notice (Doc. 72) at 1-2.

A hearing on the motion to continue was held on February 18, 2014. At the hearing, Donahoe mentioned the Court's notice regarding a potential upward departure and suggested McCulley's success in the civil suit might have a bearing on the credibility of Cahill's statements to the probation officer. *See* Mot. Hr'g Tr. (Doc. 116) at 12:2-13:2. McCulley testified that "there's a lot of people that haven't been truthful to the Court, and that there's a lot of undisputed facts that are now recorded in that case that I think would be very important in this case." *Id.* at 13:3-6. Judge Haddon interpreted this statement as "bear[ing] upon issues that relate to the merits of the charge to which this woman has pled guilty." *Id.* at 13:16-19. McCulley, the United States, and Donahoe all clarified that the lack of truthfulness McCulley was pointing to related not to the merits of the charge to which she pled guilty but to Cahill's description of the impact her behavior had on him, which was related to sentencing and not guilt. *See, e.g., id.* at 16:18-22, 18:5-11, 19:3-6. Regarding what she said at the change of plea hearing, McCulley testified:

[W]hen I had my hearing, I, I did not say I was a federal officer. I did not say I was an FBI agent. I explained to them I was an employee of the government, and I told you the truth.

. . .

. . . [W]hen I stood up here at the change-of-plea hearing, whenever it was, and I spoke to the judge, I told him exactly what I did and why. You know, I wasn't trying to make an excuse for it. So I'm not trying to make an excuse for it.

. . .

. . . I did testify to the judge exactly what I said and exactly what I did[.]

*Id.* at 14:16-19, 16:14-17, 16:25-17:1.

In response, the Court told McCulley's counsel:

Mr. Donahoe, if you think that your client has been inappropriately convicted on the basis of testimony consistent with what your client has said here today, namely, that the person whose house was visited by the defendant may have engaged in fraudulent activity himself, you can put a motion before this Court to withdraw the guilty plea[.]

*Id.* at 23:18-23. The motion to continue was denied. *See id.* at 23:2-13; Order

(Doc. 77).[2]

On February 21, 2014, the parties appeared for sentencing. Donahoe,

however, advised that McCulley and he were no longer able to communicate with

---

[2] Both counsel on the § 2255 motion and McCulley herself seem to believe Judge Haddon said in this hearing that it was important to get to the bottom of Cahill's conduct. *See, e.g.*, Mot. § 2255 (Doc. 133) at 5 ¶ 5B(i); McCulley Aff. (Doc. 144-1) at 7 ¶ 50. But Cahill was not before the Court. Only one witness was before Judge Haddon: McCulley. McCulley's accusing Cahill under oath on the witness stand was "serious" because it seemed to suggest she committed perjury at the change of plea hearing. To put it another way, if Cahill lied out of court, then it appeared likely that McCulley had lied in court. *See* Mot. Hr'g Tr. (Doc. 116) at 17:19-24, 18:12-17, 23:15-17 (referring to what "this witness here" said "under oath" "here today"). As this Court reads the transcript, Judge Haddon was concerned with McCulley's testimony, not Cahill's conduct. *See also, e.g., id.* at 15:13-14 ("[T]estimony that comes into this court under oath is significant.").

7

each other because she wished to withdraw her guilty plea and he could not in good conscience file such a motion. Donahoe was relieved, new counsel J. Mayo Ashley was appointed to represent McCulley, and sentencing was continued. *See generally* Sentencing Tr. (Doc. 118); Orders (Docs. 79, 80).

McCulley did not move to withdraw her guilty plea. On April 17, 2014, Ashley filed a sentencing memorandum objecting to portions of the presentence report and to an upward departure. He also asserted that the Bozeman civil case was the driving force behind McCulley's unlawful acts and, as the case had been concluded, she posed no real danger to anyone. *See generally* Sentencing Mem. (Doc. 86).

A sentencing hearing was held on April 25, 2014. The Court found an advisory guideline range of 0 to 6 months. Based on McCulley's harassment of Cahill's family, her threat to others, her prior conviction for a violent offense, and "the fact that Defendant took the law into her own hands in commission of the offense," the Court departed upward under U.S.S.G. §§ 5K2.0 and 5K2.14. Statement of Reasons (Doc. 90) at 2 ¶ V. McCulley was sentenced to serve 12 months in prison, to be followed by one year of supervised release. She was taken into custody. Minutes (Doc. 88); Judgment (Doc. 89) at 2-3.

McCulley requested release pending appeal but was denied. *See* Mot. for Release (Doc. 93); Minutes (Doc. 99); Order (Doc. 100). She also requested

"reconsideration" of the sentence, but that motion, too, was denied. Mot. for

Reconsideration (Doc. 94); Order (Doc. 106). On May 13, 2014, McCulley filed a

motion to withdraw her guilty plea. Mot. to Withdraw (Doc. 105). The motion

was denied on May 28, 2014. Order (Doc. 112) (citing Fed. R. Crim. P. 11(e)).

On May 22, 2014, McCulley filed a belated notice of appeal regarding the

sentence imposed nearly a month before. Notice of Appeal (Doc. 108). Her time

to appeal was extended. Order (Doc. 124).

About a year later, on April 14, 2015, the Montana Supreme Court affirmed

McCulley's $6,000,000 verdict and remanded for an award of additional post-

judgment interest. *See McCulley v. US Bank of Montana*, 347 P.3d 247, 251 ¶¶ 1-2

(Mont. 2015). On May 21, 2015, the Ninth Circuit Court of Appeals dismissed

McCulley's appeal in the criminal case as waived by the plea agreement. Mem.

(Doc. 130) at 1-3, *United States v. McCulley*, No. 14-30099 (9th Cir. May 21,

2015).

On January 4, 2016, McCulley timely filed her motion under 28 U.S.C. §

2255.

## II. McCulley's Claims

McCulley alleges, first, that counsel violated her Sixth Amendment right to

effective assistance by failing to file a timely motion to withdraw her guilty plea.

Mot. § 2255 (Doc. 133) at 4 ¶ 5A. She also claims that counsel did not adequately

investigate Cahill and so did not properly consider that Cahill lied in deposition and engaged in fraudulent conduct in the Bozeman civil case. *Id.* at 4-5 ¶ 5B. She further alleges that counsel failed to object to inaccurate statements in the presentence report that were, in turn, based on a probable cause affidavit filed in the state criminal case but later revised. *Id.* at 5 ¶ 5C. Finally, she contends that counsel advised her to plead guilty so that she could prosecute the Bozeman civil action and that his refusal to move to withdraw her guilty plea indicates he coerced her into pleading guilty in the first place. *Id.* at 6 ¶ 5D.

### III. Analysis

Claims of ineffective assistance of counsel are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, McCulley must allege facts sufficient to support an inference (1) that counsel's performance fell below an objective standard of reasonableness, *id.* at 687-88, and (2) that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. "[T]here is no reason . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Id.* at 697.

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from

counsel's perspective at the time." *Strickland*, 466 U.S. at 689. For that reason, it is important to address claims of ineffective assistance of counsel in the order in which they arose in the underlying case. Consequently, McCulley's claims are reorganized here.

## A. Failure to Investigate Cahill

McCulley contends that Donahoe should have investigated Cahill's conduct in the civil suit. She asserts that he ignored her claims that Cahill could be shown to lack credibility by pointing to his acts and/or by showing that he lied in a deposition in the civil matter.[3]

McCulley fails to appreciate the difficulty of her position in the federal criminal case. Donahoe understood it. For instance, one of his pretrial motions sought to sever trial of Counts 2 and 3 from Count 1. As evidenced by the brevity of his brief, his argument was not a strong one, *see* Fed. R. Crim. P. 8(a), but it is important to understand what severance might have meant.

Donahoe argued:

In order to try the threat count (Count I) it will be necessary to lay out in some detail the litigation dealings that the defendant had with the alleged victim in that Count, identified as R.P. In brief, defendant is

---

[3] The United States asserts that McCulley was not prejudiced by counsel's failure to investigate Cahill's credibility because she admitted she was guilty at the change of plea hearing: "If McCulley is actually guilty of false impersonation . . . it makes no difference whether T.C. could be impeached." Answer (Doc. 140) at 17; *see also, e.g., id.* at 28. The ultimate point of the ineffective assistance claim, however, is that McCulley would not have admitted she was guilty if counsel had adequately investigated and mounted an adequate defense. "Actual guilt" is not a defense to a claim of ineffective assistance.

involved in a lawsuit with R.P., and others, concerning a Bozeman real estate transaction. R.P. is an attorney. The background and tempestuous nature of that litigation, while highly relevant to Count I has less to do with Counts II and III.

Br. in Supp. of Mot. to Sever (Doc. 24) at 3.

The United States' theory in favor of trying all three counts together was that "[a]ll three charges boil down to McCulley's dissatisfaction with the state of her civil case." Resp. to Mot. to Sever (Doc. 31) at 17. Count 1 alleged that McCulley "threatened to slaughter R.P. and R.P.'s family." Indictment (Doc. 1) at 2. To support its case that this was a bona fide threat and not mere verbiage, the United States likely would have been permitted to introduce evidence about the conduct of the civil suit, including McCulley's drawing of a firearm at the settlement conference. *See* Fed. R. Evid. 404(b). That conduct, which McCulley was hardly able to deny due to her misdemeanor conviction, tended to support the sincerity of the alleged threat in Count 1. And, because the settlement conference occurred the day after McCulley showed up at Cahill's home, trying Count 1 with Counts 2 and 3 made it much easier for a rational juror to see a pattern of conduct and to find that McCulley was willing to commit all the federal crimes she was accused of. Severance, by contrast, would have given Donahoe a reasonable prospect of presenting McCulley's alleged conduct in Counts 2 and 3 as benign misunderstanding rather than additional deceptive or bullying tactics deployed by an angry, strongly motivated, potentially dangerous person. Even if Donahoe had

12

prevailed on the severance motion, he still would have wanted to avoid opening the door to McCulley's conduct at the settlement conference the day after she appeared at Cahill's home. *See, e.g.*, Br. in Supp. of Mot. to Enlarge Time (Doc. 27) at 2.

The fact that McCulley's theory of defense in the § 2255 motion is identical to the United States' theory of the prosecution should say something. *See, e.g.*, *Gerlaugh v. Stewart*, 129 F.3d 1027, 1035 (9th Cir. 1997) (counsel need not develop evidence that is "a basket of cobras"). It is difficult to see how evidence about the civil case would have *helped* McCulley at trial and easy to see how it could have harmed her. Competent counsel might well find her proposed defense a poor one.

An attorney is ineffective only if he adopts a strategy that is *unreasonable* under the circumstances. At best, McCulley's allegations regarding Donahoe's failure to investigate Cahill's credibility support an inference that other reasonable strategies might have been available. They do not support an inference that Donahoe's strategy was unreasonable. Because his strategy was plainly reasonable and did not require him to investigate Cahill's credibility, *see Strickland*, 466 U.S. at 690-91, McCulley's allegations do not meet the first prong of the *Strickland* test.

As to prejudice, McCulley has not connected the dots of the civil verdict, Cahill's testimony in the civil case or his conduct underlying it, and Cahill's role in this case. Testifying to lack of memory, for instance, *see* McCulley Aff. (Doc.

144-1) at 2 ¶ 5, is not necessarily a lie. The rules of evidence would bar Donahoe from introducing evidence of the conduct underlying the civil suit in order to encourage the jury to find that Cahill lied or behaved in a deceptive way in that case, even if Donahoe did it to support an argument that Cahill should not be believed in the criminal case either. *See* Fed. R. Evid. 608(b). McCulley has not pointed to an express finding in the civil case or any other evidence probative of Cahill's truthfulness or untruthfulness. *Id.* McCulley's allegations, therefore, also fail to support an inference that she was prejudiced by Donahoe's failure to investigate Cahill's credibility.

McCulley's claim meets neither prong of the *Strickland* test. This claim is denied.

### B. Advice to Plead Guilty

McCulley asserts that she pled guilty "because her initial attorney [Donahoe] told her that it would be the only way for her to prosecute her case against US Bank." Br. in Supp. at 19. She also now claims that "[a]t no time did I tell the Cahills, I was working for the Government, or the FBI or any other state or federal institution." McCulley Aff. (Doc. 144-1) at 4 ¶ 22. In other words, despite having been sworn and warned she was under penalty of perjury, *see* Change of Plea Tr. (Doc. 85) at 4:8-5:19, McCulley decided to lie to the judge at her change of plea hearing to make sure he would accept her guilty plea, because it was very

important to her to pursue her civil case.

That is the decision McCulley made. By her own account, she received exactly the benefit she sought from lying under oath. The Court will not relieve her of the consequences of her decision now.

Relief might be available, however, if McCulley was incorrectly advised about something a defendant would reasonably consider in deciding whether to plead guilty or go to trial. *See, e.g.*, *Hill v. Lockhart*, 474 U.S. 52, 59-60 (1985). McCulley identifies no factor of that nature.

Assuming Donahoe made it, the prediction that McCulley would be able to pursue her civil case only if she pled guilty was not unreasonable. *See, e.g.*, Change of Plea Tr. (Doc. 85) at 23:16-25:15. That is what the federal trial schedule suggested. Trial on the superseding indictment likely would have commenced on October 8, 2013. *See* Order (Doc. 32) at 2; *United States v. Karsseboom*, 881 F.2d 604, 607 (9th Cir. 1989) (holding that superseding indictment "leaving the charges and the evidence unaffected" does not reset speedy trial clock under 18 U.S.C. § 3161(c)(2)). Had McCulley been convicted, sentencing would occur three to four months later, right about the time of the civil trial. Moreover, there was a realistic probability that McCulley would have been detained pending sentencing if she had been convicted at trial, especially if convicted on Count 1. *Compare, e.g.*, 18 U.S.C. § 3142(b) *with id.* § 3143(a)

(demonstrating differing burdens for obtaining pretrial release as opposed to release pending sentencing). True, McCulley was not detained after she pled guilty, but the United States agreed not to seek her detention pending sentencing. Plea Agreement (Doc. 56) at 8 ¶ 10; Change of Plea Tr. at 40:3-41:13. If McCulley had been detained by the federal court, the Marshals would not escort her to attend her civil trial. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Simmons v. Sacramento County Superior Court*, 318 F.3d 1156, 1160 (9th Cir. 2003).

McCulley also fails to identify anything unreasonable about Donahoe's assessment that the prosecution had strong evidence against her. Ashley, her second attorney, made the same assessment. *See* Sentencing Tr. (Doc. 118) at 3:19-4:4; *see also, e.g.*, Presentence Report ¶¶ 23, 29, 30-32 (describing some of the evidence available to the prosecution). Even assuming Donahoe and McCulley both believed the United States' proof on Count 2 would not have sufficed to support a verdict at trial, Count 2 carried the lowest maximum penalty. Pleading to that count was obviously preferable to pleading to either of the other counts. (Of course, if McCulley knew she did not tell Cahill she was a federal employee, her decision to lie was her own.)

McCulley fails to identify anything unreasonable in Donahoe's advice to accept the plea offer and plead guilty to Count 2. Nor does McCulley claim that

she actually wanted to go to trial on all three counts. Neither prong of the *Strickland* test is met. This claim is denied.

## C. Failure to Timely Move to Withdraw Guilty Plea

McCulley also asserts it was ineffective for Donahoe and Ashley to both fail to move to withdraw her guilty plea.

As to Donahoe, neither prong of the *Strickland* test is met. A defendant must personally choose whether to plead guilty, but an attorney has an ethical obligation not to file a motion he believes has no reasonable legal or factual support. That is why Donahoe moved to withdraw and why he was permitted to withdraw from representing McCulley without filing a motion to withdraw the guilty plea. *See* Sentencing Tr. (Doc. 118) at 6:2-8:24. Nor did his withdrawal prejudice McCulley, as new counsel was appointed to represent her before sentencing, while she still had an opportunity to move to withdraw her guilty plea. McCulley also suggests that Donahoe's refusal to move to withdraw her guilty plea indicates he coerced her guilty plea in the first place. That is a non sequitur.

Regarding Ashley's performance, Federal Rule of Criminal Procedure 11(e) provides that a motion to withdraw a guilty plea must be made before sentence is imposed. It is not relevant whether counsel "agrees" with the rule. *See* Mot. Hr'g Tr. (Doc. 107) at 7:17-24. If counsel reaches the conclusion, before sentence is imposed, that a guilty plea should be withdrawn, failure to make the motion before

sentence is imposed is deficient performance.

Even so, McCulley cannot show prejudice. There is no reasonable probability a motion to withdraw the guilty plea would have been granted. A guilty plea may be withdrawn for a "fair and just reason." Fed. R. Crim. P. 11(d)(2). Discovery of new evidence may be a fair and just reason to support withdrawal of a guilty plea, but only if the new evidence could "plausibly . . . have motivated a reasonable person in the defendant's position to not plead guilty had he known about the evidence before pleading." *United States v. Garcia*, 401 F.3d 1008, 1011-12 (9th Cir. 2005)). McCulley said at the change of plea hearing that Cahill had lied under oath in depositions in the civil case. *See* Change of Plea Tr. (Doc. 85) at 34:11-13.[4] It is not accurate, therefore, to characterize evidence of Cahill's alleged lies as "newly discovered." *See United States v. Showalter*, 569 F.3d 1150, 1157 (9th Cir. 2009).

Further, after McCulley pled guilty but before she was sentenced,[5] she twice more stated that she falsely pretended to be and acted as an officer or employee of the United States. *See* Mot. Hr'g Tr. (Doc. 116) at 14:13-15:15 ("I did not say I was a federal officer. I did not say I was an FBI agent. I explained to them I was

---

[4] Counsel on the § 2255 motion asserts that this statement was made at sentencing. McCulley made it at the change of plea hearing.
[5] Unless McCulley were to be prosecuted for perjury, withdrawing the guilty plea would likely render inadmissible her statements at the plea colloquy. *See* Fed. R. Evid. 410(a)(1), (b)(2). The plea agreement did not address the issue.

an employee of the government."); Presentence Report ¶ 35 (quoting defendant's written statement that she had "more remorse at lying about working under the SEC"). Even if she withdrew her guilty plea, these statements likely would be admissible in evidence against her at trial. *See* Fed. R. Evid. 801(d)(2)(A); *United States v. Mitchell*, 526 U.S. 314, 321-25 (1999). Because these statements were not compelled and would undermine her ability to defend at trial, they would tend to show she had no "fair and just reason" to withdraw her guilty plea to Count 2.

For these reasons, there is no reasonable probability that McCulley would have been permitted to withdraw her plea. The prejudice prong of the *Strickland* test is not met. This claim is denied.

### D. Failure to Object to Inaccuracies in the Presentence Report

McCulley has discharged her entire sentence. The Court cannot now sentence her to anything less than she has already served. Nor is there any reason to think the presentence report itself will harm her interests in the future. "[T]here is nothing . . . to remedy, even if [the Court] were disposed to do so." *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). Consequently, this claim is denied as moot.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner

makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of McCulley's claims meets the relatively low threshold for issuance of a COA.

McCulley's claim that Donahoe should have investigated Cahill fails to recognize that the civil lawsuit was a double-edged sword. The prosecution wanted to introduce evidence related to it. *See, e.g.*, Superseding Indictment (Doc. 39) at 2. Because the civil lawsuit explained why McCulley might have committed federal crimes, it was unlikely to serve her interests. McCulley's claim that Donahoe unreasonably failed to investigate Cahill's statements or conduct in the civil suit meets neither prong of the *Strickland* test.

McCulley at least tacitly claims it was unreasonable for Donahoe to advise her to plead guilty to Count 2, but she fails to identify anything about his advice that was wrong or unreasonable. She also fails to show prejudice from his advice, as she pled guilty to the count with the lowest statutory maximum sentence. If, as McCulley now says, she lied under oath because she wanted the judge to accept

her guilty plea, she certainly makes no claim that would entitle her to relief under §
2255.

McCulley's second counsel, Ashley, failed to move to withdraw her guilty
plea before sentencing. If he believed at that time she should withdraw it, he
unquestionably rendered deficient performance. But McCulley cannot meet the
prejudice prong of the *Strickland* test. There is no reasonable probability a motion
to withdraw the plea would have been granted. She points only to "new evidence"
that was not new and suggests no other "fair and just reason" to withdraw the plea.

Finally, McCulley claims that counsel was ineffective for failing to object to
certain inaccuracies in the presentence report, but she has fully discharged her
sentence. Even assuming counsel was ineffective (a point that need not be
decided), relief on this claim is no longer available.

Reasonable jurists would not encourage further proceedings. A COA is
denied on all issues.

Accordingly, IT IS HEREBY ORDERED as follows:

1. McCulley's motion to vacate, set aside, or correct the sentence under 28
U.S.C. § 2255 (Doc. 133) is DENIED;

2. A certificate of appealability is DENIED. The Clerk of Court shall
immediately process the appeal if McCulley files a Notice of Appeal;

3. The Clerk of Court shall ensure that all pending motions in this case and

in CV 16-01-BU-DLC are terminated and shall close the civil file by entering

judgment in favor of the United States and against McCulley.

DATED this __22nd__ day of November, 2016.

Dana L. Christensen, Chief Judge
United States District Court